IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA,

v.

CIVIL ACTION FILE NO.
4:17-CR-00038-HLM-WEJ

MICHAEL ANTHONY BARR and
NADYA IVETTE DIAZ,

      Defendants.

## ORDER

This case is before the Court on Defendants Michael

Anthony Barr and Nadya Ivette Diaz's Motions to Suppress

Evidence [21, 71], as well as on the Non-Final Report and

Recommendation of United States Magistrate Judge Walter

E. Johnson [83] and Defendants' Objections to the Non-

Final Report and Recommendation [86, 87].

## I.    Standard of Review

When reviewing a magistrate judge's report and recommendation, 28 U.S.C. § 636 requires the district court to conduct "a de novo determination of those portions of the report . . . to which objection is made."    28 U.S.C. § 636(b)(1).    The Court therefore must conduct a <u>de novo</u> review of the report and recommendation if a party files a "proper, specific objection" to a factual finding contained therein.  <u>Macort v. Prem, Inc.</u>, 208 F. App'x 781, 784 (11th Cir. 2006);  <u>United States v. Gaddy</u>, 894 F.2d 1307, 1315 (11th Cir. 1990).

If no party files a timely objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error.  <u>Macort</u>, 208 F. Appx. at 784.  Legal

AO 72A
(Rev.8/8
2)

conclusions, of course, are subject to <u>de novo</u> review even if no party specifically objects. <u>United States v. Keel</u>, 164 F. Appx. 958, 961 (11th Cir. 2006); <u>United States v. Warren</u>, 687 F.2d 347, 347 (11th Cir. 1982).

## II.  Background

### A.  Procedural Background

On June 12, 2018, a grand jury in the Northern District of Georgia returned a nine-count Superseding Indictment against Defendant Barr and Defendant Diaz.  (Superseding Indictment (Docket Entry No. 1).)  The indictment charged both Defendants with knowingly and willfully conspiring, in violation of 18 U.S.C. § 371, for Defendant Barr to possess firearms after being convicted of a felony, in violation of 18 U.S.C. §§ 2 and 922(g)(1).  (<u>Id.</u>)

3

AO 72A
(Rev.8/8
2)

The indictment also charged Defendant Barr with additional offenses: (1) possession of a silencer that was not registered to him, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(7), and 5871; (2) possessing a shotgun with a barrel of less than eighteen (18) inches in length, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(2), and 5871; (3) possession of a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3); and (4) unlawfully using the identity "C.F." to obtain a temporary motor vehicle registration, in violation of 18 U.S.C. § 1028(a)(7) and in violation of Georgia law as codified at O.C.G.A. § 16-10-71. (Id.)

Defendant Barr and Defendant Diaz filed Motions to Suppress Evidence on March 15, 2018 and August 23,

AO 72A
(Rev.8/8
2)

2018, respectively.  (Def. Barr's Mot. to Suppress (Docket Entry No. 21); Def. Diaz's Mot. to Suppress (Docket Entry No. 71).)  Judge Johnson conducted an evidentiary hearing concerning these matters on May 14, 2018, (Docket Entry No. 28), which the Court Reporter has transcribed.  (Tr. (Docket Entry No. 34).)

On October 17, 2018, Judge Johnson issued his Non-Final Report and Recommendation on Defendants' Motions to Suppress.  (Non-Final Report & Recommendation (Docket Entry No. 83).)  He recommended that the Court deny both Motions.  Defendant Barr and Defendant Diaz filed their Objections to the Non-Final Report and Recommendation on October 30, 2018 and October 31, 2018, respectively.  (Def. Barr's Objs. (Docket Entry No.

5

AO 72A
(Rev.8/8
2)

86); Def. Diaz's Objs. (Docket Entry No. 87).) The Court therefore finds this matter ripe for resolution.

## B. Factual Background

During the summer of 2017, officers of the Whitfield County Sheriff's Office (the "Sheriff's Office") became aware that Mr. Barr was living at 4979 Mitchell Bridge Road as a fugitive[1] under the assumed name "Carlos Fonseca." (Tr. 5-14.) Ms. Diaz also resided on the property, which included pasturelands, woodlands, a pond, a shooting range, and multiple outbuildings. (Id.)

---

[1] At the time, Mr. Barr was the subject of outstanding warrants issued by the City of Sandy Springs, including multiple arrest warrants and a probation/parole warrant. (Tr. at 10.)

6

AO 72A
(Rev.8/8
2)

Mr. Barr came to the attention of the Sheriff's Office when Sergeant Wes Gibson and a family member, who knew Mr. Barr as "Carlos," began working for Mr. Barr part-time caring for horses. (Tr. at 6-7.) Sergeant Gibson noticed that Mr. Barr and Ms. Diaz spent large amounts of money on the farm, but they declined to say how they made their money. (Id. at 7.) Sergeant Gibson at times observed Mr. Barr with a pistol on his side and on one occasion noticed a hunting rifle in the house. (Id. at 6, 51-52.) Mr. Barr and Ms. Diaz distanced themselves from Sergeant Gibson after learning that he worked for the Sheriff's Office. (Id. at 7.)

In March 2017, Deputy Chip Hackney received information that Mr. Barr lived on the property, was the

7

AO 72A
(Rev.8/8
2)

subject of outstanding warrants, and was involved in domestic violence issues with Ms. Diaz. (Tr. at 8-9.) Deputy Hackney subsequently visited the residence several times and encountered Mr. Barr and Ms. Diaz separately, both of whom retreated into the house. (Id. at 9-10, 68.) During one such incident, Deputy Hackney observed an empty holster at Mr. Barr's side. (Id.)

In August 2017, Detective Rickey Holmes became the lead officer in this investigation. (Tr. at 5-6, 11.) To confirm Mr. Barr's identity, Detective Holmes and Detective Cameron Cox visited the residence in plain clothes on August 23, 2017. (Id. at 11-14.) Mr. Barr answered the door that day, identified himself as "Carlos," and engaged in a conversation with the detectives about purchasing

AO 72A
(Rev.8/8
2)

livestock.  (Id. at 12-13.)  Mr. Barr wore an empty holster on his hip, and the detectives felt certain after this encounter that they had positively identified Mr. Barr.  (Id. at 13-14.)

On August 31, 2017, Detective Holmes led an operation to arrest Mr. Barr under the outstanding warrants. (Tr. at 14-16.)  The officers participating in that operation observed Mr. Barr outside his residence at 10:20 a.m., as he attempted to corral a horse into a fenced pasture.  (Id. at 16-19.)  Detective Holmes then gave the order to take Mr. Barr into custody.  (Id. at 19-22.)  Officers arrested Mr. Barr at a short distance from his house and placed him in flex ties.  Detective Holmes then approached, introduced himself to Mr. Barr, and advised him of his Miranda rights. (Id. at 22, 69.)

AO 72A
(Rev.8/8
2)

Detective Holmes asked Mr. Barr his name, to which Mr. Barr responded "I, uh, I obviously need an attorney. I mean, I don't even know what this is about, sir . . . ."(Gov't Ex. 1 at 10:22:40-10:22:52; Tr. at 22-23, 69.) When asked if his name was Michael Anthony Barr, Mr. Barr declined to answer and asked, "What in the world is this?" (Gov't Ex. 1 at 10:22:52-10:22:59.) Mr. Barr stated that he recognized Detective Holmes, who acknowledged that he had "come up here asking about a goat the other day." (Id. at 10:23:05-10:23:55; Tr. at 21.) Detective Holmes again asked Mr. Barr if he was Michael Anthony Barr, to which Mr. Barr shook his head in the negative. (Gov't Ex. 1 at 10:23:05-10:24:04.)

10

AO 72A
(Rev.8/8
2)

During Mr. Barr's arrest, a man named Michael Hawkins approached the officers, and Detective Holmes walked up the driveway to speak with him. (Gov't Ex. 1 at 10:24:35-10:24:57; Tr. at 23-24.) Mr. Hawkins told Detective Holmes that he and his daughter Ashley were the only other people on the property. (Gov't Ex. 1 at 10:24:40-10:24:45; Tr. at 67.) Captain Shannon Ramsay with the Murray County Sheriff's Office told Detective Holmes that he did not know if anyone was in the house, but that no one was coming to the door. (Gov't Ex. 1 at 10:25:08; Tr. at 67-68.)

Detective Holmes walked back down the driveway and asked Mr. Barr if he had identification. (Tr. at 75.) Mr. Barr had sweat dripping in his eye, and one of the arresting

AO 72A
(Rev.8/8
2)

officers asked Mr. Barr if there was someone in the house who could get him something to wipe his face. (Id. at 42.) Mr. Hawkins approached at this time, and the officer asked him to wipe Mr. Barr's face. (Gov't Ex. 1 at 10:26:00-10:26:03; Tr. at 42.) Mr. Hawkins then asked Mr. Barr if everything was okay, to which Mr. Barr responded, "I don't know. Can you do me a favor, um, in the bedroom, can you just grab my phones? Two phones." (Gov't Ex. 1 at 10:25:05-10:25:14; Tr. at 25, 44.)

While Mr. Barr and Mr. Hawkins discussed where the phones were located, Detective Holmes said to Mr. Barr, "We're going to escort him in there to get your stuff. We don't want him going in there and . . . ." (Gov't Ex. 1 at 10:26:26; Tr. at 25, 45-47, 70.) Mr. Hawkins then asked,

12

AO 72A
(Rev.8/8
2)

"Does [Ashley] know which one is your bedroom?" Mr. Barr replied, "[The phones] should be right on the bed." (Gov't Ex. 1 at 10:26:26-10:26:35; Tr. at 25, 44, 46-47.) Mr. Hawkins said, "Okay," and began walking to the house accompanied by Detective Holmes. (Tr. at 26.) Captain Ramsay and Detective Cox joined the two men as they walked into the house. (Id. at 26, 53.) Mr. Barr made no further statements at that time. (Id. at 26, 76-77.)

Upon entering the home, Detective Holmes observed bullets on a table next to the back door and asked Mr. Hawkins, who had been leading the way, to step aside. (Tr. at 26, 55.) When Detective Holmes entered the bedroom, he saw a rifle and the phones on the bed and a pistol on the nightstand. (Id. at 27-28.) Detective Holmes then

AO 72A
(Rev.8/8
2)

announced, "You know what? Sir, this is what we are going to do. We are going to get out of the house since there's guns and stuff here and we're not going to get . . . [Mr. Barr] can wait on getting his phones . . . there's guns back there so I don't want you digging around and stuff." (Gov't Ex. 1 at 10:28:21-10:28:35; Tr. at 56.) The officers left the contraband and cleared the home to make sure there was no one inside who could walk out with a gun. (Gov't Ex. 1 at 10:28:35-10:29:36; Tr. at 28, 60-61.)

Upon exiting the home, Detective Holmes explained to Mr. Barr that they did not retrieve his phones because there were "guns all over the house." (Gov't Ex. 1 at 10:29:39-10:29:49; Tr. at 28-29.) Mr. Barr again asked for his phones repeatedly, so that he could call an attorney. (Gov't

14

AO 72A
(Rev.8/8
2)

Ex. 1 at 10:29:49-10:30:35; Tr. at 29, 56-57, 78-79.) The officers explained that eventually they would bring Mr. Barr his phones. (Gov't Ex. 1 at 10:30:35-10:30:37; Tr. at 32, 56-57.) Officers subsequently obtained a search warrant from a state court judge and seized the items listed in the Superseding Indictment. (Tr. at 56-57.)

## III. Discussion

Defendants contend in their Motions to Suppress that Detective Holmes violated the Fourth Amendment by accompanying Mr. Hawkins into Mr. Barr's house without a warrant. (<u>See generally</u> Def. Barr's Mot. to Suppress (Docket Entry No. 21); Def. Diaz's Mot. to Suppress (Docket Entry No. 71).) They therefore assert that the Court

AO 72A
(Rev.8/8
2)

must suppress any evidence arising from that unlawful entry.  (Id.)

Judge Johnson recommended that the Court deny Defendants' Motions to Suppress because Mr. Barr gave consent for Detective Holmes to enter his home.  (See Non-Final Report & Recommendation at 9-13.)  Judge Johnson further concluded that Detective Holmes' search of the home was part of a "protective sweep" and therefore did not violate the Fourth Amendment, regardless of consent.  (Id.) Defendants object that Mr. Barr did not give valid consent, and they also argue that no basis existed to perform a protective sweep of the house.  (See generally Def. Barr's Objs.; Def. Diaz's Objs.)  The Court agrees with Judge Johnson that Mr. Barr consented to Detective Holmes' entry

16

AO 72A
(Rev.8/8
2)

of his home, and it therefore will deny the Motions to Suppress.

## A. Consent

The Court finds that Judge Johnson accurately summarized the Fourth Amendment law governing consent to police searches. (Non-Final Report & Recommendation at 9-10.) In particular, the Report and Recommendation properly noted that "[i]n considering whether consent to a search was voluntarily given, the Court examines the totality of the circumstances." (Id. at 9 (citing United States v. Tovar-Rico, 61 F.3d 1529, 1535 (11th Cir. 1995).) The Court agrees with Judge Johnson's conclusion that, based on the totality of the circumstances, "Mr. Barr voluntarily

AO 72A
(Rev.8/8
2)

consented to allow officers to accompany Mr. Hawkins into the house to retrieve his cell phones." (Id. at 13.)

In his Objections, Mr. Barr contends that his actions toward Detective Holmes did not amount to consent because "[a]s a matter of law, it cannot be said that failure to object to a search equals consent to the search." (Def. Barr's Objs. at 9 (quoting United States v. Gonzalez, 71 F.3d 819, 829-830 (11th Cir. 1996)).) The Court does not find Mr. Barr's objection persuasive. It is true that mere failure to object is, as a matter of law, insufficient to find consent to a search. See Bates v. Harvey, 518 F.3d 1233, 1244 (11th Cir. 2008) ("We have found that meaningful consent cannot be derived from the mere failure to object to a search . . . ."). The Eleventh Circuit also holds, however,

AO 72A
(Rev.8/8
2)

that "explicit verbal consent" is not necessary where an individual's actions convey permission to enter a home. United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002) (finding valid consent to enter a house where the defendant's body language "yield[ed] the right-of-way" to officers). Judge Johnson therefore correctly found that Mr. Barr communicated his consent by continuing the describe the location of his cell phones "after Detective Holmes explained to Mr. Barr that officers would have to escort Mr. Hawkins in the house for safety reasons." (Non-Final Report & Recommendation at 11-12.)

Judge Johnson also correctly rejected Mr. Barr's contention that Detective Holmes unilaterally "claim[ed] authority" to enter the home and thereby forced Mr. Barr's

19

AO 72A
(Rev.8/8
2)

consent. (Id. at 12 (alteration in original).) As the report and recommendation accurately states, "Mr. Barr repeatedly asked that [Detective Holmes and Mr. Hawkins] return and retrieve his cell phones" after their initial entry into his home. (Id.) Thus, it appears from the totality of the circumstances that "Mr. Barr made the determination that calling an attorney was more important than excluding the officers from the house." (Id. at 13.) The Court accordingly agrees with Judge Johnson that Detective Holmes did not force Mr. Barr's involuntary consent through a claim of authority.

The Court further finds that Judge Johnson accurately discussed and applied United States v. Wright, 324 F. App'x 800 (11th Cir. 2009) to the facts of this case. In Wright, the Eleventh Circuit found voluntary consent where the

20

AO 72A
(Rev.8/8
2)

defendant, while under arrest, requested permission to retrieve his shirt and shoes from inside his home. 324 F. App'x at 801. The defendant asked his girlfriend to bring his shirt and shoes from the back of the house, which she did while accompanied by an officer. Id. The Report and Recommendation properly analogizes Wright to this case, where Mr. Barr requested Mr. Hawkins to retrieve his cell phones, which Mr. Hawkins did while accompanied by Detective Holmes. (Non-Final Report & Recommendation at 11-12.) The Court therefore agrees with Judge Johnson that Mr. Barr consented to Detective Holmes' entry of his house, and it will adopt his recommendation to deny Defendants' Motions to Suppress.

21

AO 72A
(Rev.8/8
2)

## B. Protective Sweep

The Court finds that Judge Johnson accurately summarized the law concerning protective sweeps. (Id. at 10-11.) The Report and Recommendation also accurately states that "Mr. Barr was known to have previously kept weapons in the home" and that "the officers had no way of knowing whether Ms. Diaz was in the residence or if anyone else other than Mr. Hawkins and his daughter were visiting Mr. Barr that day." (Id. at 12.) In light of the Court's agreement that Mr. Barr consented to the entry of his home, however, there is no need to further determine whether Detective Holmes' search qualified as a protective sweep. The Court finds that Detective Holmes entered the house with Mr. Barr's consent, at which point he observed the

AO 72A
(Rev.8/8
2)

items listed in the Superseding Indictment, and he therefore did not require justification to conduct a protective sweep.

## IV. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States District Judge Walter E. Johnson [83], **OVERRULES** Defendants' Objections thereto [86, 87], and **DENIES** Defendants' Motions to Suppress [21, 71].

IT IS SO ORDERED, this the 2ⁿᵈ day of November, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/8
2)