IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CIVIL ACTION FILE |
| MICHAEL ANTHONY BARR and NADYA IVETTE DIAZ, | NO. 4:17-CR-0038-HLM-WEJ |
| Defendants. | |

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Suppress Mr. Barr's In-Custody Statements [67]. Defendant Anthony Michael Barr contends that his custodial statements of September 1, 2017 must be suppressed because he had invoked his right to counsel upon his arrest the day before. On September 12, 2018, the Court conducted an evidentiary hearing [76], which has been transcribed [74]. The issue has been briefed. (Gov't Br. [85]; Def. Barr Resp. [94].) For the reasons explained below, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

I.     **THE SUPERSEDING INDICTMENT**

On June 12, 2018, a grand jury in the Northern District of Georgia returned an nine-count Superseding Indictment [1] against defendant Barr, charging that he knowingly and willfully conspired with co-defendant Nadya Diaz, in violation of 18 U.S.C. § 371, for Mr. Barr to possess firearms after having been convicted of a felony, in violation of 18 U.S.C. §§ 2 and 922(g)(1).  In addition to charging Mr. Barr as a felon in possession, the Superseding Indictment charged him with possession of a silencer that was not registered to him, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(7), and 5871, possessing a shotgun with a barrel of less than 18 inches in length, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(2), and 5871, possessing a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and unlawfully using the identify of "C.F." to obtain a temporary motor vehicle registration in violation of Georgia law O.C.G.A. § 16-10-71 and 8 U.S.C. § 1028(a)(7).  The Superseding Indictment also contains a forfeiture provision.

**II.     STATEMENT OF FACTS**

On August 31, 2017, Mr. Barr was arrested at his home on Mitchell Bridge Road in Whitefield County and taken to the Whitefield County Sherriff's Office ("WCSO"). (Tr. 11-12.) At the time of his arrest, Mr. Barr requested that officers retrieve his cell phones from the home. (Id. at 13; see also id. at 27-28.) That evening, the lead investigator, Detective Rickey Dewayne Holmes, approached Mr. Barr while he was in the jail booking area to advise Mr. Barr of his charges. (Id. at 12, 16, 26-27.) Mr. Barr asked Detective Holmes if they could talk. (Id. at 12, 15-16, 27-28.) Detective Holmes reminded Mr. Barr that he had invoked his right to counsel upon arrest and declined to speak with Mr. Barr that evening. (Id. at 12, 27; see also id. at 23-24.) Detective Holmes told Mr. Barr that he should think about whether he wanted to speak without an attorney and said they could meet the next day if Mr. Barr still wanted to talk. (Id. at 12, 27-29.)

On September 1, 2017, Detective Holmes asked the jailors to bring Mr. Barr to the interview room in the WCSO criminal investigation division. (Tr. 13.) Detective Holmes also asked the evidence technician to bring Mr. Barr's cell phones to the interview room. (Id. at 13.) Mr. Barr was in the interview room when Detective Holmes entered. (Id. at 14-15, 30.) Detective Holmes asked Mr. Barr if he still wanted to talk without an attorney present. (Id. at 14-15, 30.) Mr.

Barr responded that it depended on what Detective Holmes wanted to talk about. (Id. at 15-16, 30-31.) Detective Holmes told Mr. Barr he could decline to answer any question. (Id. at 16, 31.) Detective Holmes then read Mr. Barr his Miranda rights and again asked Mr. Barr if he wanted to talk and Mr. Barr agreed to do so. (Id. at 16-18, 31-32.)

Detective Holmes stated that the evidence technician would bring Mr. Barr's cell phones, so he could get the numbers out of them. (Tr. 18, 32-33.) Detective Holmes began asking Mr. Barr identifying information when the cell phones were brought into the interview room. (Id. at 19-20.) Detective Holmes then asked Mr. Barr which cell phone he needed the numbers from and Mr. Barr stated that he needed numbers from the smaller cell phone. (Id. at 20.) Without further questioning, Mr. Barr began speaking to Detective Holmes. (Id. at 20-21.) During the two-hour interview, Mr. Barr did most of the talking and determined the topics of conversation for the most part. (Id. at 21.) Mr. Barr also asked to speak with federal agents. (Id. at. 23.) The conversation was relaxed, and no law enforcement officer threatened Mr. Barr. (Id. at 21.) Mr. Barr did not mention that he needed a lawyer during the interview and, while Mr. Barr declined to answer some questions, he did not ask to end the interview. (Id. at 16, 24.)

4

### III. MOTIONS TO SUPPRESS EVIDENCE

"The right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations . . . that it 'requir[es] the special protection of the knowing and intelligent waiver standard.'" Davis v. United States, 512 U.S. 542, 458 (1994) (quoting Edwards v. Arizona, 451 U.S. 477, 483 (1981)). When a person in law enforcement custody invokes the right to counsel, he may not be interrogated "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 485. That rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." Michigan v. Harvey, 494 U.S. 344, 350 (1990).

If, after invoking his right to counsel, the defendant initiates a conversation with police about the pending investigation, the Government must prove that waiver of the previously asserted right is knowing and voluntary. See Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983). Courts assess the validity of a defendant's waiver of the Fifth Amendment right to counsel with a two-step inquiry. First, the Court must determine if the defendant's choice was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Lall, 607 F.3d 1277, 1283 (11th Cir. 2010) (quoting Moran v. Burbine, 475 U.S.

412, 421 (1986) (internal quotation marks omitted)). Second, courts assess whether the waiver was knowing and intelligent based on the defendant's "awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995) (quoting Moran, 475 U.S. at 421) (internal quotation marks omitted).

Here, the Government concedes that Mr. Barr invoked the right to counsel upon his arrest. (Gov't Br. 7.) However, the Government has established that Mr. Barr initiated the September 1, 2017 interview with Detective Holmes. At the September 12, 2018 hearing, Detective Holmes testified that Mr. Barr asked to speak with him the night of Mr. Barr's August 31, 2017 arrest. Mr. Barr also may have asked for numbers from his cell phone at that time. Regardless of whether Mr. Barr made one or both requests, Detective Holmes reminded Mr. Barr that he had invoked his right to counsel and declined to speak with him that night, so that Mr. Barr could have time to reconsider whether he indeed wanted to speak without an attorney present. Not until the next day did Detective Holmes meet with Mr. Barr and, before engaging in meaningful conversation, Detective Holmes again asked Mr. Barr if he wanted to speak without an attorney present. Thus, law enforcement clearly did not badger Mr. Barr into speaking despite invoking his right to counsel earlier.

Moreover, the Government has established that Mr. Barr waived his right to counsel voluntarily and did so knowing the consequences of his decision. Mr. Barr not only initiated the conversation with Detective Holmes but he also had time to reconsider his request and confirmed his desire to speak with Detective Holmes a second time. There is no evidence that Detective Holmes deceived Mr. Barr or used Mr. Barr's desire for his phone contacts to coerce him into speaking without an attorney. Indeed, after Detective Holmes <u>Mirandized</u> Mr. Barr and asked which of the cell phone's numbers he needed, Mr. Barr began discussing the investigation without further questioning by Detective Holmes. During the two-hour interview, Mr. Barr declined to answer some of Detective Holmes's questions and he asked Detective Holmes to facilitate an interview with federal law enforcement officials. Based on the totality of the circumstances, Mr. Barr was aware of his right to an attorney, aware of the consequences of speaking to law enforcement without counsel, and voluntarily abandoned his Fifth Amendment right. Accordingly, the undersigned **RECOMMENDS** that Mr. Barr's Motion be **DENIED**.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion to Suppress Mr. Barr's In-Custody Statements [67] be **DENIED**.

**SO RECOMMENDED**, this 29th day of November, 2018.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE