# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

UNITED STATES OF AMERICA,

v.  CIVIL ACTION FILE NO.
4:17-CR-00038-01-HLM-WEJ

MICHAEL ANTHONY BARR

Defendant.

## ORDER

This case is before the Court on the Motion to Suppress filed by Defendant Michael Anthony Barr ("Mr. Barr") [67], as well as on the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [95] and Mr. Barr's Objections to the Non-Final Report and Recommendation [100].

## I. Standard of Review

When reviewing a magistrate judge's report and recommendation, 28 U.S.C. § 636 requires the district court to conduct "a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The Court therefore must conduct a <u>de novo</u> review of the report and recommendation if a party files a "proper, specific objection" to a factual finding contained therein. <u>Macort v. Prem, Inc.</u>, 208 F. App'x 781, 784 (11th Cir. 2006); <u>United States v. Gaddy</u>, 894 F.2d 1307, 1315 (11th Cir. 1990).

If no party files a timely objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. <u>Macort</u>, 208 F. Appx. at 784. Legal

AO 72A
(Rev.8/8
2)

conclusions, of course, are subject to de novo review even if no party specifically objects. United States v. Keel, 164 F. Appx. 958, 961 (11th Cir. 2006); United States v. Warren, 687 F.2d 347, 347 (11th Cir. 1982).

## II. Background

### A. Procedural Background

On June 12, 2018, a grand jury in the Northern District of Georgia returned a nine-count Superseding Indictment against Mr. Barr and against Defendant Nadya Ivette Diaz. (Superseding Indictment (Docket Entry No. 35).) The indictment charged both defendants with knowingly and willfully conspiring, in violation of 18 U.S.C. § 371, for Mr. Barr to possess firearms after being convicted of a felony, in violation of 18 U.S.C. §§ 2 and 922(g)(1). (Id.)

3

AO 72A
(Rev.8/8
2)

The indictment also charged Mr. Barr with additional offenses: (1) possession of a silencer that was not registered to him, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(7), and 5871; (2) possessing a shotgun with a barrel of less than eighteen (18) inches in length, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(2), and 5871; (3) possession of a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3); and (4) unlawfully using the identity "C.F." to obtain a temporary motor vehicle registration, in violation of 18 U.S.C. § 1028(a)(7) and in violation of Georgia law as codified at O.C.G.A. § 16-10-71. (Id.)

Mr. Barr filed a Motion to Suppress on August 10, 2018. (Mot. to Suppress (Docket Entry No. 67).) The Court

AO 72A
(Rev.8/82)

therefore conducted an evidentiary hearing on September 12, 2018, (Docket Entry No. 76), which has been transcribed. (Tr. (Docket Entry No. 74).)

On November 29, 2018, Judge Johnson issued his Non-Final Report and Recommendation on Mr. Barr's Motion to Suppress. (Non-Final Report & Recommendation (Docket Entry No. 95).) He recommended that the Court deny the Motion. Mr. Barr filed Objections to the Non-Final Report and Recommendation on December 10, 2018. (Objs. (Docket Entry No. 100).) The Court therefore finds this matter ripe for resolution.

AO 72A (Rev.8/82)

## B. Factual Background

On August 31, 2017, officers of the Whitfield County Sheriff's Office (the "Sheriff's Office") arrested Mr. Barr at his home. (Tr. at 11-12.) At the time of his arrest, Mr. Barr asked the officers to retrieve his cell phones from inside the home. (Id. at 13.) Mr. Barr also invoked his constitutional right to counsel by requesting an attorney. (Id. at 3-4.)

That evening, the lead investigator, Detective Rickey Dewayne Holmes, approached Mr. Barr while he was in the jail's booking area to advise Mr. Barr of his charges. (Tr. at 12, 16, 2-27.) At this time, Mr. Barr asked Detective Holmes if they could talk. (Id. at 12, 15-16, 26-27.) Detective Holmes then reminded Mr. Barr that he had invoked his right to counsel upon arrest, and he declined to

6

speak with Mr. Barr that evening. (Id. at 12, 27.) Detective Holmes told Mr. Barr that he should think about whether he wanted to speak without an attorney, then said that they could meet the next day if Mr. Barr still wished to talk. (Id. at 12, 27-29.)

On September 1, 2017, Detective Holmes asked the jailors to bring Mr. Barr to an interview room. (Tr. at 13.) Detective Holmes also asked an evidence technician to bring Mr. Barr's cell phones. (Id.) Mr. Barr was in the interview room when Detective Holmes entered. (Id. at 14-15, 30.) Detective Holmes asked Mr. Barr if he still wanted to talk without an attorney present. (Id.) Mr. Barr responded that this depended on what Detective Holmes wanted to talk about. (Id. at 15-16, 30-31.) Detective

7

AO 72A (Rev.8/8 2)

Holmes informed Mr. Barr that he could decline to answer any question. (Id. at 16, 31.) Detective Holmes then read Mr. Barr his Miranda rights and again asked Mr. Barr whether he wanted to talk. (Id. at 16-18, 31-32.) Mr. Barr agreed to speak. (Id.)

Detective Holmes first stated that the evidence technician would bring Mr. Barr his cell phones, so that Mr. Barr could retrieve numbers from them. (Tr. at 18, 32-33.) Detective Holmes then began asking Mr. Barr identifying information. (Id. at 19-20.) After Mr. Barr's cell phones were brought into the interview room, Detective Holmes asked Mr. Barr which cell phone he needed, and Mr. Barr responded that he needed numbers from the smaller phone. (Id. at 20.) Without further questioning, Mr. Barr began

8

speaking to Detective Holmes. (Id. at 20-21.) During what became a two-hour interview, Mr. Barr did most of the talking and determined the topics of conversation for the most part. (Id. at 21.) Mr. Barr also asked to speak with federal agents. (Id. at 23.) Mr. Barr did not mention that he needed a lawyer during the interview, and, while he declined to answer some questions, he did not ask to end the interview. (Id. at 16, 24.)

## III. Discussion

Mr. Barr contends that the statements he gave while in custody on September 1, 2017 must be suppressed. (Mot. to Suppress at 2.) Mr. Barr argues that, because he invoked his constitutional right to counsel during his arrest on August 31, 2017, Detective Holmes was forbidden

9

thereafter from questioning him without an attorney present. (Id. at 1-2.)

Judge Johnson concluded, however, that Mr. Barr "waived his right to counsel voluntarily and did so knowing the consequences of his decision." (Non-Final Report & Recommendation at 7.) He found that Mr. Barr "voluntarily abandoned" his right to counsel by initiating conversation with Detective Holmes after his arrest, and by later confirming his desire to speak without an attorney. (Id.) Judge Johnson therefore recommended that the Court deny Mr. Barr's Motion to Suppress. (Id.)

Mr. Barr objects that the Government has "failed to meet its burden to show that Mr. Barr waived his right to counsel . . . ." (Objs. at 2.) More specifically, Mr. Barr

10

argues, the prosecution has failed to prove that he initiated contact with Detective Holmes "for any reason other than the sole purpose of retrieving contact information from his [cell phone]." (Id. at 6.) Mr. Barr therefore asks the Court to reject Judge Johnson's recommendation. (Id.)

The Court agrees with Judge Johnson that Mr. Barr voluntarily waived his right to counsel by initiating a conversation with Detective Holmes at the Sheriff's Office. The questioning that occurred on September 1, 2017 therefore did not violate Mr. Barr's constitutional rights, and the Court will deny Mr. Barr's Motion to Suppress.

The Court finds that Judge Johnson accurately summarized the law governing Mr. Barr's right to counsel under the Fifth Amendment of the United States

11

Constitution. In particular, the Non-Final Report and Recommendation correctly states: "When a person in law enforcement custody invokes the right to counsel, he may not be interrogated 'unless the accused himself initiates further communication, exchanges, or conversations with the police.' " (Non-Final Report & Recommendation at 5 (quoting Edwards v. Arizona, 451 U.S. 477, 485 (1981)).) "[T]he Government must prove that the waiver of the previously asserted right is knowing and voluntary." (Id. (citing Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983).)

The Court further agrees with Judge Johnson that "Mr. Barr initiated the September 1, 2017 interview with Detective Holmes." (Non-Final Report & Recommendation at 6.) The Government's evidence establishes that Mr. Barr, at his

12

AO 72A (Rev.8/82)

booking, asked Detective Holmes "if [they] could talk." (Tr. at 12.) At that time, Detective Holmes reminded Mr. Barr of his right to counsel and declined to speak with Mr. Barr until the next day. (Id.) Detective Holmes did so to ensure that Mr. Barr's decision to talk was thoughtful and deliberate. (See id. ("I told him that if he still wanted to talk to me, that I was going to wait until the next day. That way he could sleep on it and be sure that he wanted to talk without an attorney.").) Then, when Mr. Barr later reaffirmed his desire to speak without an attorney, Detective Holmes read Mr. Barr his Miranda rights. (Id. at 17-18.) Thus, the Government's evidence shows that Mr. Barr knowingly waived his right to counsel by voluntarily initiating

13

communication with law enforcement, and he did so knowing the consequences of his decision.

Mr. Barr's objection, that he only initiated conversation with Detective Holmes "for the sole purpose of retrieving contact information" from his cell phones, is not persuasive. At the evidentiary hearing on this matter, Mr. Barr's counsel questioned Detective Holmes as to what Mr. Barr said at his booking. The following exchange then occurred:

> Q: And he said to you I want to speak with you about getting contacts from my phone?
>
> A: He asked if he could talk with me, and I said – now when he asked for the contacts, it was earlier on the 31st. I don't remember if he asked for them again that night or not.
>
> Q: Okay.

14

> A. I'm not saying that he didn't ask for the contacts again that night, but I don't remember specifically if he did.
>
> Q. And that's perfect. So just for clarity of the record, it is potential that Mr. Barr said I would like to talk with you or can I talk with you about getting my contacts from my phone, or can I talk to you. That's pretty much what he said that night, one of the two?
>
> A. That's correct.

(Tr. at 28.)

Mr. Barr attempts to argue, based on this testimony, that his sole request on the night of August 31, 2017 was to retrieve his cell phones. The Court does not agree. Detective Holmes maintained consistently while testifying that Mr. Barr approached him at booking and asked "to talk." Although Detective Holmes did concede that Mr. Barr may

15

have asked for his cell phones sometime that same night, at no point did he contradict his earlier statement that Mr. Barr asked him, in general terms, "to talk."

To the extent that Detective Holmes may have equivocated somewhat on his version of events, in response to questioning from Mr. Barr's counsel, the Court still finds that the Government has carried its burden of proof. Judge Johnson acknowledged in his recommendation that "Mr. Barr also may have asked for numbers from his cell phone [at the time of his booking]," but he nonetheless concluded, and the Court agrees, that "the Government has established that Mr. Barr initiated the September 1, 2017 interview with Detective Holmes." (Non-Final Report & Recommendation

16

AO 72A
(Rev.8/8
2)

at 6.) The Court accordingly finds that the evidence supports the Government's position.

Thus, in summary, the Government has shown that Mr. Barr's interrogation by Detective Holmes on September 1, 2017 did not violate Mr. Barr's constitutional rights. Although Mr. Barr invoked his right to counsel at his arrest on August 31, 2017, he voluntarily waived that right by asking Detective Holmes to speak with him while in custody at the Sheriff's Office, and by later reaffirming his desire to talk without an attorney present. The Court therefore will deny Mr. Barr's Motion to Suppress his statements.

AO 72A
(Rev.8/82)

## IV. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States District Judge Walter E. Johnson [95], **OVERRULES** Mr. Barr's Objections thereto [100], and **DENIES** Mr. Barr's Motion to Suppress [67].

IT IS SO ORDERED, this the 20 day of December, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

18