IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL ANTHONY BARR,<br><br>   Defendant pro se. | CRIMINAL ACTION FILE<br><br>NO. 4:17-CR-0038-MLB-WEJ |

# NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant pro se Michael Anthony Barr's Motion to Suppress Search Warrant [136], Motion to Suppress in Custody Statements and Actions Subsequent to Invocation of Fifth Amendment Right to Counsel [137], Motion for Evidentiary Hearing on Purported Search Warrants Validity [138], and Motion to Suppress Evidence and Dismiss Indictment [164]. For the reasons set forth below, the undersigned **RECOMMENDS** that these Motions be **DENIED**.

I. **MOTION TO SUPPRESS SEARCH WARRANT [136]**

In his Motion to Suppress Search Warrant, Mr. Barr argues that the search warrant executed at the Mitchell Bridge Road property on August 31, 2017 was based on false statements in Detective Rickey Holmes's supporting affidavit and

asks the Court to suppress any evidence seized thereunder and the derivative "fruits" of the search.  (Mot. Suppress [136].)  Defendant requests an evidentiary hearing on the matter pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

A presumption of validity attaches to an affidavit supporting a search warrant application.  Franks, 438 U.S. at 171.  "Thus, a defendant is generally not entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit."  United States v. Price, 582 F. App'x 846, 850 (11th Cir. 2014) (per curiam).  A defendant has a right to a Franks hearing only where he makes "'a substantial preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth,'" and "'the false statement was necessary to the finding of probable cause.'"  United States v. Maharaj, No. 07-80024-CR-CR, 2007 WL 2254559, at *6 (S.D. Fla. Aug. 2, 2007) (quoting Franks, 438 U.S. at 156).

The supporting affidavit for the search warrant at issue here describes the Mitchell Bridge Road property; multiple encounters between law enforcement officers and Mr. Barr; discrepancies between Mr. Barr's stated identity (i.e., Carlos Fonseca) and the names registered to his vehicles, residence, and utilities; calls concerning incidents of domestic violence between a "Mike" and "Nadya" at

the property; identification of Mr. Barr by officers by comparing his driver's license photograph with their knowledge of his appearance after an in-person encounter; Mr. Barr's criminal history and status as a felon; and the observation of multiple firearms in Mr. Barr's residence upon his arrest. (See Gov't Ex. 2 [177-2].) Mr. Barr takes issue with the investigation into his identity and asserts that the officers were not confident "Carlos Fonseca" was in fact Mr. Barr. (See generally Mot. Suppress.) Mr. Barr also cites Detective Holmes's misstatement during the probable cause hearing in the Whitfield County Magistrate Court.[1] (Id. at 10-11.)

Many of the statements in the affidavit that Mr. Barr objects to concern background information and are immaterial to probable cause. Additionally, Detective Holmes's admitted mistake at the state probable cause hearing is not included in the warrant affidavit. Rather, the affidavit simply states that "BARR

---

[1] At the September 27, 2017 probable cause hearing in Whitfield County Magistrate Court, Detective Holmes testified that Mr. Barr had "motioned for us to go in" to get his phones. (Mot. Suppress 10-11 & Ex. 3 [136-1].) After re-watching the body camera video, Detective Holmes realized that Mr. Barr's hand motion concerned the sweat in his eyes. (Sept. 27, 2017 Hr'g Tr. [34], at 31.) Detective Holmes explained his mistake to the Assistant District Attorney, who then alerted Mr. Barr's counsel. Given Detective Holmes's actions to correct the matter, the undersigned reports that he did not act in bad faith at the hearing.

advised ok that he wanted his phones." (Gov't Ex. 2 [177-2], at 4.)  This is what Detective Holmes believed at the time he swore to the affidavit and it is consistent with this Court's finding after considering all the evidence presented at the May 14, 2018 hearing [28], including Detective Holmes's testimony[2] and the body camera video.  (See Order of Nov. 2, 2018 [89], at 17-18, adopting R&R of Oct. 17, 2018 [83] ("[B]ased on the totality of the circumstances, Mr. Barr voluntarily consented to allow officers to accompany Mr. Hawkins into the house to retrieve the cell phones.") (internal quotation marks omitted).  Finally, it appears that Mr. Barr's Motion is an impermissible attempt to suppress the fruits of the arrest.  See United States v. Farias-Gonzalez, 556 F.3d 1181, 1186 (11th Cir. 2009) ("The body or identity of a defendant . . . in a criminal . . . proceeding is never itself suppressible as a fruit of an unlawful arrest.") (internal quotation marks and citation omitted).

      Thus, Mr. Barr has not made a substantial preliminary showing that Detective Holmes knowingly and intentionally included a false statement in the warrant affidavit or that any false statement therein was necessary to the finding

---

[2] The Court notes that Mr. Barr's counsel thoroughly cross-examined Detective Holmes regarding his state court testimony.

4

of probable cause. Because Mr. Barr has not met his burden under Franks, he is not entitled to an evidentiary hearing. For the reasons set forth above, the affidavit is presumed valid and the undersigned **REPORTS** that it establishes probable cause to believe that Mr. Barr was living under a fraudulent identity and that he was in unlawful possession of firearms, all in violation of Georgia law. Accordingly, the undersigned **RECOMMENDS** that the Motion to Suppress Search Warrant [136] be **DENIED**.

## II. MOTION TO SUPPRESS IN CUSTODY STATEMENTS [137]

In his Motion to Suppress in Custody Statements and Actions Subsequent to Invocation of Fifth Amendment Right to Counsel, Mr. Barr asks the Court to revisit the question of whether he consented to the August 31, 2017 warrantless entry into his home on Mitchell Bridge Road. (Mot. Suppress [137].) Mr. Barr, through his former counsel, has already litigated both this issue and the question of whether his September 1, 2017 custodial statements are admissible.[3] (See Mot. Suppress [21]; Mot. Suppress In-Custody Statement [67].)

---

[3] The Government has already conceded that Mr. Barr's reference to needing an attorney upon his arrest sufficed for invocation of counsel. (See Sept. 12, 2018 Hr'g Tr. [74] 3-4.) Likewise, the Government has announced that it will not use Mr. Barr's second post-arrest statement on September 5, 2017. (Id. at 5.)

5

The Court has found no evidence that the officers coerced Mr. Barr to gain entry to his home for the purposes of conducting an illegal search, and that Mr. Barr voluntarily consented to the officers' entry so that Mr. Hawkins could retrieve Mr. Barr's cell phones. (See Order of Nov. 2, 2018 [89], adopting R&R of Oct. 17, 2018 [83].) Likewise, the Court has found that Mr. Barr's September 1, 2017 custodial statement was voluntary and in compliance with Miranda after he requested to speak with Detective Holmes at the Whitefield County Sherriff's Office. (See Order of Dec. 20, 2018 [103], adopting R&R of Nov. 29, 2018 [95].) Finally, to the extent that Mr. Barr seeks to suppress his repeated requests for his phones on August 31, 2017, or his statements to Mr. Hawkins on that day, those statements were not the result of police interrogation and therefore are not subject to Miranda. Accordingly, the undersigned **RECOMMENDS** that the Motion to Suppress in Custody Statements and Actions Subsequent to Invocation of Fifth Amendment Right to Counsel [137] be **DENIED**.

### III. MOTION FOR EVIDENTIARY HEARING [138]

In his Motion for Evidentiary Hearing on Purported Search Warrants Validity, Mr. Barr challenges the validity of the August 31, 2017 search warrant for the Mitchell Bridge Road property. (Mot. for Hr'g [138].) Mr. Barr challenges the judge's signature on the warrant, asserts that the warrant was not

filed in compliance with Georgia law and does not comply with Federal Rule of Criminal Procedure 41, and challenges the warrant's particularity as to the place to be searched and the items to be seized. (Id.)

### A. The Warrant's Appearance and Execution

Mr. Barr argues that the warrant is invalid because the judge's signature is a single letter unaccompanied by a printed name and the signature is not identical to that on the affidavit. (Mot. for Hr'g 2-3.) According to Mr. Barr, the warrant does not resemble other warrants from the issuing jurisdiction and was not filed with the clerk of court along with a signed written return documenting the items seized. (Id.)

As an initial matter, the Court notes that the issue of the warrant's signature was addressed by Mr. Barr's former counsel at the March 13, 2019 Faretta hearing. (Mar. 13, 2019 Hr'g Tr. [122], at 29.) Then defense counsel, Brian Steel, told the Court that he had followed up on Mr. Barr's questions regarding the signatures on the warrant and affidavit. (Id.) Mr. Steel explained as follows:

> I spoke with the Honorable Superior Court Judge Morris' court, I explained the issue, I asked in writing – I sent them the search warrant and they responded in writing that the Court did, in fact, sign the search warrant so I told Mr. Barr I'm not going to file that motion. I also spoke with lawyers who practice in that court who said that that is the Honorable Judge Morris' signature, and I didn't feel that it is appropriate to do that to the Court.

7

(Id.)  Furthermore, the Government has provided the Court with copies of the warrant for the Mitchell Bridge Road property, executed return, and inventory list, which were on file with the authorizing state judge's chambers.  (Gov't Resp. 9 & Exs. 1-3 [177-1, -2, -3].)  According to the Government, those documents were not filed with the state court clerk because the state case against Mr. Barr was dismissed due to the federal investigation.  (Id.)

Any failure to comply with Georgia law is irrelevant because federal law governs challenges to the warrant at issue.  See United States v. Butera, 677 F.2d 1376, 1380 (11th Cir. 1982) (federal law governs admissibility of evidence in federal criminal cases, and complaints that evidence was seized in violation of state law are ineffective).  However, Rule 41 does not apply here because the warrant was obtained from a state judge by local law enforcement officers after their own investigation and therefore was not "federal in execution."  See United States v. Brown, 569 F. App'x 759, 762 (11th Cir. 2014) (per curiam) (holding that Rule 41 only governs searches that are "federal in execution," i.e, where a federal official had a hand in the investigation) (citation omitted); see also United States v. Gordon, 686 F. App'x 702, 705 (11th Cir. 2017) (citing Butera and rejecting argument that trial court erred in upholding search warrant that did not technically comply with Georgia law).  Regardless, absent a showing of prejudice

8

or deliberate bad faith, violations of Rule 41's ministerial requirements do not warrant suppression of the items seized. See United States v. Harden, No. 1:16-CR-297-MHC-JSA, 2017 WL 1312928, at *4 (N.D. Ga. Jan. 13, 2017), R. & R. adopted, 2017 WL 517818 (N.D. Ga. Feb. 8, 2017). Moreover, while not controlling, Georgia law also overlooks technical irregularities that do not affect the accused's substantive rights. See Sampson v. State, 303 S.E.2d 77, 79-80 (Ga. Ct. App. 1983) (rejecting argument that warrant was inadmissible because it was not filed with the issuing court after execution or docketed as required by O.C.G.A. § 17-5-22 because those "were technical irregularities not affecting the substantive rights of the accused").

Ultimately, the warrant was signed by the state court judge after reviewing the accompanying affidavit, executed, and returned to the state court judge's chambers with an inventory list. (See Gov't Exs. 1-3 [177-1, -2, -3].) Thus, Mr. Barr has failed to show that he has been prejudiced or that his substantial rights were affected by the alleged facial defects and the absence of filing with the clerk.

### B. Particularity with Regard to Vehicles and Other Items

Mr. Barr argues that, even if the search warrant is valid, it fails to describe with particularity the place to be searched and made no mention of three vehicles located on the property (at least one in a separate out building), which were seized

and searched. (Mot. for Hr'g 3-10.) Mr. Barr also takes issue with the seizure of other items and electronic devices not specifically mentioned in the warrant, e.g., cell phones, laptop computers, and currency. (Id.)

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional." United States v. Lisbon, 835 F. Supp. 2d 1329, 1345 (N.D. Ga. 2011). Under Eleventh Circuit precedent, a warrant that permits the search of a "property" or "premises" is sufficient to support the search of a vehicle on the premises. See United States v. Armstrong, 546 F. App'x 936, 939 (11th Cir. 2013) (per curiam).

Here, the search warrant was not limited to Mr. Barr's home, but described the "entire premises, including curtilage," specifically referencing both the home and outbuildings, and permitted the agents to "enter, search and seize" the "person, premises, or property" described therein. (Gov't Ex. 2 [177-2].) The warrant identified the property to be seized as "instruments, article(s), person(s), or things, namely: firearms, rifles, pistols, ammunition, holsters, and

identification information, which is being possessed in violations of Georgia Law." (Id.)  Thus, contrary to Mr. Barr's assertion, the search warrant extended to all the vehicles on the premises, including those located in outbuildings.  Notably, much of the contraband seized was found in the vehicles, including weapons, ammunition, and identity documents.

With regard to the seized electronic devices, such items clearly store identification information and therefore could properly be seized under the warrant.[4]  See United States v. Anyanwu, No. 1:12-CR-190-TWT, 2013 WL 3283748, at *5 (N.D. GA. June 28, 2013).  Additionally, the incriminating character of such devices is immediately apparent, permitting their seizure under the plain view doctrine.  See id. ("[T]he scope of the plain view doctrine extends to the seizure of items that, while not contraband themselves, may be used as evidence against a defendant.") (internal quotation makes and citation omitted); United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1345 (N.D. Ga. 2009) (upholding seizure of cell phones in plain view when agents were lawfully in home executing search warrant).

---

[4] Notably, Mr. Barr's electronic devices were only seized at the time and were not searched until after law enforcement officers obtained a warrant for that purpose.  (See Gov't Resp. 17.)

11

Moreover, "[t]he seizure of items not covered by a warrant does not automatically invalidate an otherwise valid search." <u>United States v. Schandl</u>, 947 F.2d 462, 465 (11th Cir. 1991); <u>see also</u> <u>United States v. Henson</u>, 848 F.2d 1374, 1383 (6th Cir. 1988) (holding that agents did not exceed the scope of the warrant in a mail fraud conspiracy case despite seizing such items as office supplies, blank paper, horse records, and divorce records). Finally, the Government is in the process of returning many of the seized items to defendants and Mr. Barr has identified his son as an individual with authority to take possession of certain items. (<u>See</u> Letter of June 17, 2019 [182].) Accordingly, for the reasons discussed above, the undersigned **RECOMMENDS** that the Motion for Evidentiary Hearing on Purported Search Warrants Validity [138] be **DENIED**.

### IV. MOTION TO SUPPRESS EVIDENCE AND DISMISS [164]

In his Motion to Suppress Evidence and Dismiss Indictment, Mr. Barr reiterates many of the arguments set forth in his earlier Motions and argues that the investigation violated his Fourth Amendment rights by searching via P2P or "Peer to Peer" file sharing. (Mot. Suppress [164].) For the reasons set forth <u>supra</u> Parts I-III and in the undersigned's numerous Reports and Recommendations [83, 95, 132, 134, 159, 161, 166, 168, 170] in this case, many

of which have already been adopted by the District Judge [89, 103, 145, 146], Mr. Barr's repetitive arguments fail.  Additionally, Mr. Barr's argument regarding an alleged Peer to Peer file sharing investigation is frivolous, as no such search occurred.  Rather, the officers used a "Police to Police" information sharing platform, abbreviated as P2P, to search for any arrest warrants on Mr. Barr.  (See Gov't Resp. [177] 17-18; Def.'s Ex. 4 [136-1], at 59.)  Accordingly, the undersigned **RECOMMENDS** that the Motion to Suppress Evidence and Dismiss Indictment [164] be **DENIED**.

    **SO RECOMMENDED**, this 24th day of June, 2019.

    _____
    WALTER E. JOHNSON
    UNITED STATES MAGISTRATE JUDGE