# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

United States of America,

v.

Michael Anthony Barr (1),

Defendant.

_____/

Case No. 4:17-cr-00038

Michael L. Brown
United States District Judge

# ORDER

Defendant Michael Anthony Barr filed four motions to suppress evidence. (Dkts. 136, 137, 138, 164.) The Magistrate Judge recommended denying each. (Dkt. 183.) Defendant then objected to those recommendations. (Dkts. 188, 189.) This Court reviewed Defendant's motions de novo, adopts the Magistrate Judge's recommendation, and denies Defendant's motions.

## I. Motion to Suppress Search Warrant (Dkt. 136)

Defendant claims the affidavit supporting the search warrant for his house contains misstatements or falsehoods. He seeks to suppress any evidence seized under the search warrant and an evidentiary hearing, as outlined by *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

According to the affidavit, a police officer, Sergeant Gibson, and his mother-in-law worked for Defendant. (Dkt. 136-1 at 5–6.) Defendant identified as Carlos Fonseca, both to Sergeant Gibson and in his later interactions with the police. (*Id.* at 4–8.) In March and then mid-August 2017, the police received phone calls informing them that there had been domestic disturbances at Defendant's address involving a "Mike." (*Id.* at 5.) The second phone call had two complainants and both complainants informed the police that "Mike" made his money selling drugs, though not at the residence. (*Id.* at 5–6.)

A police officer identified "Mike" as Michael Anthony Barr, including by looking at a driver's license photo of the person believed to live at the residence. (*Id.* at 6.) Police also went to the house, knocked on the door, spoke with Defendant, and confirmed he was Michael Anthony Barr. (*Id.*) The police obtained an arrest warrant for Defendant and returned to his house. After officers arrested him, Defendant asked officers to go into the house and get his cell phones so he could call his lawyer. (*Id.* at 7.)[1] While inside, police saw bullets and firearms. (*Id.*)

---

[1] Defendant disputes that he consented to the police going into his house. The Court, however, has already ruled that the totality of the

2

They left the house and obtained a search warrant. (*Id.*) During that search, they found the firearms and other contraband that led to the current charges.

"Affidavits supporting arrest warrants are presumptively valid . . . [and] a defendant is generally not entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit." *United States v. Price*, 582 F. App'x 846, 850 (11th Cir. 2014) (citations omitted). A defendant has a right to a *Franks* hearing only if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–156.

Defendant attacks almost every part of the affidavit. Many of the items he attacks were simply background information and irrelevant to the issue of probable cause. The core of the affidavit was that the officers had previously identified Defendant as the person for whom they had

---

circumstances shows the police had consent to enter his home. (*See* Dkts. 83, 89.)

outstanding warrants and that, after being arrested, he consented to the police entering his house. So, to get a *Franks* hearing, Defendant must make a substantial preliminary showing that the affidavit establishing probable cause for the search warrant used false statements either to establish Defendant Barr's identity or the basis for the police to enter his house.

The Magistrate Judge properly found that Defendant has not met this burden. First, identity cannot be suppressed as a fruit of an illegal seizure. *See United States v. Farias-Gonzalez*, 556 F.3d 1181, 1189 (11th Cir. 2009) ("[W]e hold that the exclusionary rule does not apply to evidence to establish the defendant's identity in a criminal prosecution . . . ."). The affidavit also contains uncontroverted statements creating probable cause to believe Defendant was Michael Anthony Barr, including the phone calls reporting a domestic disturbance and the photo identification with a driver's license photo. (Dkt. 136-1 at 5.) Second, the Court already has determined that Defendant gave the police consent to enter his home. (Dkt. 83 at 13 ("[B]ased on the totality of the circumstances, Mr. Barr voluntarily

4

consented to allow officers to accompany Mr. Hawkins into the house to retrieve his cell phones."). The Court reaffirms this finding.

Defendant raises other issues with the affidavit, particularly about Detective Holmes's change of testimony. Detective Holmes initially testified that Defendant motioned for the police to enter the house. (Dkt. 34 at 29.) The video of the arrest showed, however, that Defendant was handcuffed. (*Id.* at 30.) Seeing this discrepancy, Detective Holmes's attorney contacted Defendant's attorney about this mistake. (*Id.* at 30–32.) Defendant, through his attorney, already has had the chance to cross-examine Detective Holmes on this charge. (*Id.* at 31.) And the discrepancy in his testimony was immaterial to the warrant. In the warrant affidavit, Detective Holmes did not explain how Defendant Barr did not mention the hand gesture. Simply put, this is not new information — the Court already has addressed this issue. (*See* Dkts. 83, 89.)

Defendant has not made a preliminary showing that an allegedly false statement in the affidavit was necessary to establish probable cause. The Court thus overrules Defendant's objections, adopts the

Magistrate Judge's recommendation, and denies Defendant's motion to suppress. (Dkts. 136, 183, 189.)

## II. Motion to Suppress In Custody Statements (Dkt. 137)

Defendant immediately asked for a lawyer when the police arrested him. He claims the police continued coaxing him into allowing them into the house. Defendant essentially argues whatever consent he gave the police was not valid because he asked for a lawyer.[2] This argument fails because his statements to Mr. Hawkins and the police about his cell phones were not part of an interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."). He also argues the police violated his Fifth Amendment rights against self-incrimination. The Court, however, has already found Defendant consented to the police entering his home. (*See* Dkts. 83, 89.)

---

[2] Defendant makes clear that this motion addresses no statements after Defendant was in jail and refers only to whether he could consent to the police entering his house after he asked for a lawyer. (Dkt. 189 at 20.)

6

For the reasons above, the Court overrules Defendant's objections, adopts the Magistrate Judge's recommendation, and denies Defendant's motion. (Dkts. 137, 183, 189.)

### III. Motion For Evidentiary Hearing On Purported Search Warrants Validity (Dkt. 138)

Defendant argues the search warrant was invalid and the police seized items outside the warrant's bounds, particularly electronics and items within vehicles.

#### A. Search Warrant's Appearance and Execution

Defendant claims the judge did not sign the arrest warrant and so the warrant is invalid. He has a handwriting expert that will attest to this fact. Even so, this claim is meritless. The Court already addressed this issue in a hearing in March 2019. (Dkts. 120, 122.) The Court learned that Defendant's former lawyer wrote the state court judge to ask about the signature. (Dkt. 122 at 29.) The state court judge informed him that she signed the search warrant. (*Id.*)

Defendant also argues the search warrant is deficient because it was not filed with Whitfield County's court clerk. The warrant was not filed because the state's case against Barr was dismissed so that the federal investigation could continue. (Dkts. 177-1, 177-2, 177-3.)

7

The Magistrate Judge put it perfectly:

> Ultimately, the warrant was signed by the state court judge after reviewing the accompanying affidavit, executed, and returned to the state court judge's chambers with an inventory list. Thus, Mr. Barr has failed to show that he has been prejudiced or that his substantial rights were affected by the alleged facial defects and the absence of filing with the clerk.

(Dkt. 183 at 9 (citations omitted).) The Court rejects these claims.

### B. Search Warrant's Particularity on Location and Items Seized

The search warrant included "[t]he entire premises, including curtilage, located at 4979 Mitchell Bridge Road, Dalton, Whitfield County, Georgia." (Dkt. 136-1 at 4.) The warrant listed these items: "certain instruments, articles, person(s), or things, namely: firearms, rifles, pistols, ammunition, holsters, and identification information which is being possessed in violation of Georgia Law." (*Id.*) Defendant argues the police took things beyond the warrant's scope.

Under the Fourth Amendment, warrants must name the place to be searched with particularity. "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally overbroad and the resulting general search is

unconstitutional." *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1345 (N.D. Ga. 2011) (citing *Stanford v. Texas*, 379 U.S. 476, 485–86 (1965)).

Defendant claims the police lacked authority to search the three vehicles on the premises. He argues the warrant did not list these vehicles and the police had time to get a proper warrant. Defendant is wrong. Police can search vehicles parked on the premises of a residence in a warrant. *See United States v. Mitchell*, 503 F. App'x 751, 755 (11th Cir. 2013) ("[A] search of vehicles located on the premises to be searched is valid even if the search warrant had been silent as to the vehicles.").

Defendant also argues that the electronics seized were beyond the warrant's scope. The warrant did not list electronics but did list "instruments" including "identification information." (Dkt. 136-1 at 4.) Phones and electronics store identification information and the police could thus seize them under the warrant. *See United States v. Anyanwu*, No. 1:12-CR-190, 2013 WL 3283748, at *5 (N.D. Ga. June 28, 2013). The police only searched these items after getting a separate warrant. (Dkt. 177 at 17.) What is more, the police could have also seized the cell phones under the plain view exception. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("[I]f police are lawfully in a position from which they

9

view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."); *see also United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1346 (upholding the seizure of cell phones under the plain view doctrine).

The police have returned some items, including cars and ATVs, to Defendant. (Dkt. 177 at 16.) The government is returning other items, and Defendant has listed his son as an individual with authority to receive some items. (Dkt. 182.)

Defendant argues repeatedly the police could have searched the cars and electronics with a more specific warrant. The point, however, is that the warrant covered the items the police seized. The Court thus overrules Defendant's objections, adopts the Magistrate's recommendation, and denies Defendant's motion. (Dkts. 138, 183, 188.)

## IV. Motion to Suppress Evidence and Dismiss Indictment (Dkt. 164)

Defendant moves to dismiss the indictment because, he alleges, the police investigated him without authorization and the police used improper techniques to find his name. Boiled down, Defendant argues that if the police didn't have his name then they couldn't go into his house

10

and arrest him. And the only way the police knew his identity was through an unauthorized investigation that coalesced into an illegal search. In effect, Defendant's claim relies on the Court suppressing his name. But, as noted above, a person's identity cannot be suppressed as the fruit of an illegal search. *See Farias-Gonzalez*, 556 F.3d at 1189 ("[W]e hold that the exclusionary rule does not apply to evidence to establish the defendant's identity in a criminal prosecution . . . ."). Defendant's claim thus fails.

In his objections, Defendant argues the government has failed to disclose a parallel construction, or the "law enforcement process of building a separate and parallel evidentiary basis for a criminal investigation to conceal how the investigation actually began." (Dkt. 189 at 39.) Defendant's allegations rely on unfounded inferences and the Court rejects them.

The Court overrules Defendant's objections, adopts the Magistrate's recommendation, and denies Defendant's motion. (Dkts. 164, 183, 188.)

## V. Conclusion

The Court **OVERRULES** Defendant's objections (Dkts. 188, 189), **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 183), and **DENIES** Defendant's motions (Dkts. 136, 137, 138, 164).

**SO ORDERED** this 13th day of August, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE