# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

United States of America,

v.

Michael Anthony Barr (1),

Defendant.

_____/

Case No. 4:17-cr-00038

Michael L. Brown
United States District Judge

## **ORDER**

On November 5, 2019, the Court held a pretrial conference and hearing to address outstanding motions. The Court announced its rulings but provides this order to memorialize and supplement (some of) its previous findings.

1. The Court denies Defendant Barr's Motion for Judicial Notice of Adjudicative Facts and Motion for Reconsideration of Denied Motions (Dkt. 190-1). Defendant Barr has failed to establish his right to reconsideration by showing (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. *United States v. Morgan*, No. 1:08-CR-208-

TCB, 2016 WL 11410576, at *1 (N.D. Ga. Mar. 17, 2016) ("Although no statute or rule expressly provides for the filing of a motion for reconsideration in criminal cases, federal district courts necessarily have substantial discretion in ruling on motions for reconsideration. As in the context of a motion for reconsideration filed in a civil case, appropriate grounds for reconsideration include: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." (quotation marks and citations omitted)).

2. Whether Judge Cindy Morris of the Whitfield County Superior Court signed the search warrant authorizing the search of Defendant Barr's residence is a question of fact. Defendant Barr filed several motions arguing that he needs more examples of her signature, signatures from other witnesses, and additional expert analysis before the Court can decided this issue. The Court disagrees. Based on the totality of evidence, the Court finds that Judge Morris signed the search warrant.

Judge Cindy Morris testified unequivocally that she signed the warrant. She also provided an affidavit and affirmed its accuracy on the

witness stand. (Dkts. 204-1 at 13; 255 at 6:5–25.) She explained that her handwriting and signature deteriorate throughout the day as her hand becomes fatigued, possibly causing her signature to change. (Dkt. 264 at 16.) She explained she started wearing a brace because of numbness and pain in her writing hand. (*Id.*) Judge Morris also explained her internal process for approving warrants. She explained that she keeps in her own file a copy of the executed warrant, affidavit, and return. (*Id.* at 14.) Before coming to court, she found her copies of those documents for the warrant at issue and attached them to her affidavit. (*Id.* at 15, 20, 26.) Her possession of the documents corroborates her testimony that she signed the warrant on the day of the search. Judge Morris was credible.[1]

Detective Dewayne Holmes also testified. He said that he saw Judge Morris sign the warrant. The undisputed evidence also shows that Detective Holmes stopped the protective sweep of Defendant Barr's home when he saw many firearms. (*Id.* at 23.) In an abundance of caution, he

---

[1] Defendant Barr claims Judge Barr had "every motive" to lie when she affirmed her signature. (*See, e.g.,* Dkt. 224-1 at 4.) The Court disagrees. If she had not signed the warrant, she would have had every reason to admit that fact. She did not place herself in jeopardy until she agreed to submit a sworn affidavit and testify under oath in this proceeding. The Court rejects Defendant Barr's suggestion that Judge Morris had any motive to do anything but tell the truth.

backed out of the house and told Defendant Barr he would obtain a warrant. This historical fact supports his testimony that he did just that — obtained a warrant. He was credible.

Defendant Barr's stand-by counsel (with Defendant Barr's consent) proffered to the Court that (during Defendant Barr's investigation of the warrant) he spoke with Lynda Black, Judge Morris's assistant. The lawyer explained that Mrs. Black looked at the signature on the warrant at issue and recognized it as Judge Morris's signature. Mrs. Black also explained that she showed the signature to Judge Morris, and Judge Morris confirmed her signature. While Mrs. Black did not testify, Defendant Barr admits she made this statement, and the Court accepts that admission. All three potential witnesses agree that Judge Morris signed the warrant.

Defendant Barr's own analysis of publicly available documents containing Judge Morris's signature showed that she has used the signature at issue here going back to at least January 2011. (Dkt. 195-2 at 23.) Defendant Barr dismisses the import of this evidence from his own analysis by simply expanding the scope of his imagined conspiracy, claiming the signature "seems to be the 'default go to signature' for who

4

knows how many conspirators who have been violating the rights of the citizens [of Georgia] which probably consists of countless law enforcement [officers] with at least knowledge of Judge Cindy Morris' actions." (Dkt. 195 at 24.) The Court disagrees with Defendant Barr's conclusion. Evidence that Judge Morris used the signature at issue for many years on other documents supports her testimony that she signed the warrant here.

    The Court also considered the testimony of Defendant Barr's witness, Steven Drexler, a forensic handwriting examiner. After comparing various documents purporting to bear Judge Morris's signature and noticing a difference between them, he concluded someone other than Judge Morris signed the search warrant. He claimed to be 65% to 70% sure in his assertion. (Dkt. 255 at 43:3–6.) He admitted, however, that one person could have two very different signatures, describing the difference as a "credit card signature" and a "formal signature." (*Id.* at 40:15–22.) He also admitted that a person could have two different signatures as a result of hand fatigue or carpal tunnel syndrome. (*Id.* at 39:21–40:8.) Defendant Barr asked if "a hand element, like carpal tunnel or something, . . . are you saying that the probability

of someone having a completely different signature with completely different characteristics altogether would be the result of fatigue, because that's what [Judge Morris's] affidavits says?" (*Id.* at 47:18–24.) Mr. Drexler answered "it's possible, yes." (*Id.* at 47:25)

Defendant asks the Court for more documents containing Judge Morris's signature, like her home mortgage, driver's license, and bar records. (Dkts. 203; 224-1.) He also asks for her medical records documenting her hand ailment. (*Id.*) But Defendant Barr already has many examples of her signature. And regardless of his own belief in the similarities or differences between the various signatures or however many other signatures he gets, his own expert has admitted that fatigue — as opposed to forgery — could account for the difference between examples of Judge Morris's signatures. Defendant Barr's own expert assessed Judge Morris's explanation and found it possible.[2] More

---

[2] Not wanting to accept his own expert's testimony, Defendant Barr claims that Mr. Drexler told him after the hearing that he "motioned" for Defendant Barr to stop questioning him after making this admission because he felt "threatened" by the Court "aggressively grilling him" and feared the Court was getting angry enough to "throw him in jail." (Dkt. 224-1 at 14.) The transcript does not support Defendant Barr's assertion of aggressive questioning, and the Court rejects it. The Court also notes that Defendant Barr neither provided an affidavit from Mr. Drexler nor

6

signatures might allow more analysis and might even allow the expert to increase his percentage of certainty. But however high Mr. Drexler got that percentage, he has already admitted that her hand ailment could explain the difference in the appearance of her signatures. He could not get to 100%, and more analysis would thus be futile.

In the light of all the evidence, the Court finds that Judge Morris signed the warrant at issue.[3] The Court thus denies Defendant Barr's various motions on this issue, specifically his Brief in Support of September 6th, 2019 hearing on Judge Cindy Morris (Dkt. 224-1); Motion for Court to take Notice of Adjudicative Facts (Dkt. 195); and Affidavit in Support of Subpoena to Produce Documents (Dkt. 203).

---

any other evidence to support his allegation and attempt to explain away his own witness's testimony.

[3] As his only other basis for calling Judge Morris a liar, Defendant Barr claims that other judges in Whitfield County engaged in criminal activity. He claims former Magistrate Judge Bryant Cochran has been imprisoned for "similar conduct" and that Judge Shana Vinyard resigned "due to corrupt acts." (Dkt. 195 at 24–25.) What either former judge may have done is, of course, not evidence. Defendant Barr's allegations are also wrong. The United States prosecuted former Judge Cochran for drug possession and planting evidence on someone accusing him of misconduct, not for allegedly forging search warrants. *See United States v. Cochran*, 682 Fed. App'x 828, 831 (11th Cir. 2017). Judge Vinyard's difficulties had to do with a personal relationship, not forging search warrants.

7

3. The Court adopts the Magistrate Judge's non-final Report and Recommendation (Dkt. 248) and grants Defendants Diaz's and Barr's respective motions to dismiss Count 9 of the Second Superseding Indictment (Dkts. 223, 230-2).

4. The Court denies Defendant Barr's Objection to Juror Oath (Dkt. 126). Contrary to Defendant Barr's assertion at the hearing that jurors may do as they wish, the law requires jurors to follow the law as the Court provides.

5. The Court adopts the Magistrate Judge's non-final Report and Recommendation (Dkt. 241) and denies Defendant Barr's Motion to Dismiss the Indictment for Speedy Trial Violations (Dkt. 231).

6. The Court, with Defendant Barr's agreement, denies as moot his Motion to Dismiss for Prosecutorial Misconduct (Dkt. 232).

7. The Court adopts the Magistrate Judge's non-final Report and Recommendation (Dkt. 239) and denies Defendant Barr's Motion to Dismiss for Prosecutorial Misconduct (Dkt. 233).

8. The Court grants in part and withholds adjudication in part on the government's Initial Motion in Limine (Dkt. 221). The Court reserves ruling on the admissibility of argument and evidence inviting the jury to

consider Defendant Diaz's conduct in the context of the First and Second Amendments of the United States Constitution. The Court grants the government's motion and excludes argument by Defendant Barr about the legality of the search of his home, the authenticity of the signatures on the search warrant, and any suggestions that the government's prosecution is tainted by improper motives.

9. The Court reserves ruling on Defendant Diaz's Motion in Limine (Dkt. 222).

10. The Court grants in part, denies in part, and withholds adjudication in part on Defendant Barr's Motion in Limine (Dkt. 224). As the United States no longer intends to introduce Defendant Barr's statement on the September 1, 2017, video, the Court grants Defendant Barr's motion in limine to exclude it. Without an appropriate stipulation under *Old Chief v. United States*, 519 U.S. 172 (1997), the Court denies Defendant Barr's motion in limine to prevent the United States from introducing his prior felony conviction or requiring the United States to admit only his conviction for a "non-violent criminal offense." (Dkt. 224.) The Court further denies Defendant Barr's motion to exclude evidence of his prior felon-in-possession convictions on the grounds provided by the

United States. The Court denies Defendant Barr's motion to exclude evidence of security badges, a bullet-resistant vest, police uniforms, and other items that police found in his home on the day of his arrest provided the United States lays the foundation to link Defendant Barr's possession of those items to his possession of firearms as discussed. The Court also denies Defendant Barr's motion to exclude a handwritten letter the government claims he sent Defendant Diaz. Defendant Barr presented no evidence suggesting the United States obtained the letter illegally or otherwise in violation of his Fourth Amendment rights so as to warrant any further hearing. Indeed, he did not even allege that the United States did so. His unsupported claim that someone else stole it is not a basis for suppression or exclusion. The United States may admit the letter if it lays a proper foundation, including evidence to establish that Defendant Barr wrote it. Defendant Barr can re-assert his objections to these items at trial if he believes the United States has not laid the proper foundation. The Court reserves ruling on whether Defendant Diaz's domestic violence expert testimony is admissible. The Court will also consider during trial Defendant Barr's motion to exclude the drug

evidence police found in his home if Defendant Barr properly asserts an objection.

11.     Defendant Barr has filed a Notice of Intent to Introduce Evidence Regarding Defendant's legal status in which he explains that he intends to introduce "certain public records and filings with several clerks offices between 2013 and the present" as well as other "filings with other federal and state government agencies." (Dkt. 225.) Defendant Barr's argument borders on the non-sensical, relying on the Uniform Commercial Code, reservations of rights, his interpretation of natural and common law, and some strange twists of logic to get to an allegation that he lacked the mens rea to commit the crimes charged. He argued during the November 5, 2019, hearing, for example, that he was not convicted of a prior felon in possession charge in Gwinnett County because, after pleading guilty, he filed a reservation of rights to which no one from the State of Georgia ever responded. He argued this even though he then served more than a year in a Georgia prison for that conviction.

The United States must prove (among other things) that Defendant Barr "knew he belonged to the relevant category of persons barred from possessing a firearm" — that is, a person convicted of a crime punishable

by imprisonment of more than one year. *Rehaif v. United States*, 139 S.Ct. 2191, 2200 (2019). This does not require the government to show Defendant Barr knew he was precluded from possessing a firearm but simply that he knew his status as a convicted felon. Of course, the United States must still prove the additional elements of the offense.

If Defendant Barr establishes some factual basis to suggest that — despite his convictions for felony offenses — he believed he had not been convicted of a felony, Defendant Barr may introduce relevant documents. Perhaps his filing in the Gwinnett County action is such a document but he must lay that foundation. To be relevant, any such document must pre-date his alleged criminal activity here. As a result, the Court grants the United States's motion to exclude all documents created or filed after August 31, 2017. (*See* Dkt. 235 at 2 (list of and link to documents Defendant Barr seeks to admit filed after his arrest).) Before admitting any other documents, Defendant Barr must also provide some relevance, presumably by his own testimony or some other testimony about his state of mind. The Court notifies Defendant Barr that — if he raises this defense — the United States could introduce evidence of his multiple felony convictions, despite any stipulation under *Old Chief*, to carry its

burden of proof.  The Court also grants the United States's motion to exclude excerpts from "Constitutional Law by Carl Miller" unless Defendant Barr can establish some basis in fact for its relevance.  (*See* Dkt. 253 at 4 (link to Defendant Barr's proffered document).)  The Court will instruct the jury on the controlling law.  The Court reminds Defendant Barr that, as of the November 5, 2019, hearing, he still had not submitted proposed jury instructions.

**SO ORDERED** this 7th day of November 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE